UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN ADMIRALTY

**FILED**

2010 MAR 18 AM 10: 20

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

MI EUROPA MARITIME CO.,

Plaintiff,

vs.                                                                 CASE NO.: 6:10-cv-411-Orl-28DAB

A cargo of approx. 60,000 barrels of ULSD
aboard the M/V HORIZON THEANO, *in rem*,

Defendant.

_____/

## VERIFIED *IN REM* COMPLAINT

Plaintiff MI EUROPA MARITIME CO. (hereinafter referred to as "Plaintiff"), by and through its undersigned attorneys, as and for its Verified Complaint against a cargo of approx. 60,000 barrels of ULSD aboard the motor vessel HORIZON THEANO *in rem*, alleges, upon information and belief, as follows:

1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333. This claim involves the breach of maritime contract of charter.

2. At all times material to this action, Plaintiff was, and still is, a foreign company duly organized and operating under the laws of the Marshall Islands.

3. Plaintiff was at all material times the owner of the ocean going motor vessel "HORIZON THEANO" (hereinafter the "Vessel").

1

4. Non-party SEA HARVEST WORLDWIDE ENERGY ("Sea Harvest') was, and still is, a foreign corporation, or other business entity, organized under, and existing by virtue of the laws of Canada with an address at 176 Redpath AV, Toronto, Canada.

5. Non-party PDVSA PETROLEO, S.A. ("PDVSA") was, and still is, a foreign corporation, or other business entity, organized under, and existing by virtue of the laws of Venezuela.

6. Sea Harvest and/or PDVSA were the carriers, owners and/or shippers of a cargo of ultra low sulfur diesel ("ULSD"), which was ultimately loaded aboard the Vessel.

7. By a charter party dated December 31, 2009 (hereinafter "charter party") Plaintiff voyage chartered the Vessel to Sea Harvest for the carriage of cargo from 1-2 safe ports in Venezuela including Puerto La Cruz, Venezuela to 1-2 safe ports in the UKC area or the Euro-med area.

8. Pursuant to the terms of the charter party, Plaintiff delivered the Vessel into the service of Sea Harvest and has at all times fully performed its duties and obligations under the charter party.

9. The charter party provides for payment of demurrage[1] at the rate of $17,000 per day, pro rata.

10. Clause 21 of the terms and conditions incorporated into the charter party provides as follows:

Lien. The Owner shall have an absolute lien on all cargo for all. . .demurrage and costs, including attorneys fees, of recovering the same, which lien shall continue after delivery

---

[1] Demurrage is a fixed sum, per day or per hour, agreed to be paid for the detention of the vessel under charter at the expiration of laytime allowed.

2

of the cargo into the possession of the Charterer, or of the holders of any Bills of Lading covering the same or of any storagemen.

11. On or about December 31, 2009, Sea Harvest sub-chartered the Vessel to PDVSA for the carriage a cargo of up to 400,000 barrels ULSD from 1-2 safe ports in Venezuela including Puerto La Cruz, Venezuela to 1-2 safe ports in UKC or the Euro-med area.

12. PDVSA was on notice that Plaintiff was the owner of the Vessel. The sub-charter party dated December 31, 2009 ("sub-charter party") expressly states that Plaintiff is the Owner of the Vessel and Sea Harvest is the disponent owner of the Vessel.

13. Clause 21 of the terms and conditions incorporated into the sub-charter party provides as follows:

> Lien. The Owner shall have an absolute lien on all cargo for all...demurrage and costs, including attorneys fees, of recovering the same, which lien shall continue after delivery of the cargo into the possession of the Charterer, or of the holders of any Bills of Lading covering the same or of any storagemen.

14. Pursuant to clause 21 of the sub-charter party, Plaintiff, the Owner as defined in the sub-charter party itself, has an absolute lien against all cargo of PDVSA for its claims.

15. In accordance with the charter party (and sub-charter party), a cargo of 239,400 barrels ULSD was loaded on board the Vessel at Puerto La Cruz, Venezuela and bills of lading were issued by or on behalf of Plaintiff for ultimate discharge in Port Tupper, Nova Scotia.

16. During the course of loading, the amount of laytime[2] provided for under the charter party was exceeded and demurrage charges were incurred.

---

[2] Laytime refers to the time allowed by the shipowner to the voyage charterer in which to load and/or discharge the cargo.

3

17. PDVSA was aware that demurrage charges had been incurred during the loading process, that they remained unpaid and that a lien clause was present in Plaintiff's charter party with Sea Harvest (and the sub-charter party between itself and PDVSA) that provided Plaintiff shall have a lien on all cargo should for unpaid demurrage and costs.

18. Despite due demand, Sea Harvest failed and refused to pay the outstanding demurrage to Plaintiff in breach of the charter party.

19. Despite PDVSA's knowledge of the unpaid demurrage and the lien clause contained in the charter party and the sub-charter party, PDVSA paid sub-freights and/or other amounts to Sea Harvest, which should have been paid directly to Plaintiff.

20. As a result of PDVSA's payment of sub-freights or other amounts to Sea Harvest despite its knowledge of the demurrage owed, the lien and/or the lien clause with relation to the cargo, PDVSA is liable to Plaintiff for those amounts paid to Sea Harvest.

21. The Vessel was ordered to discharge the cargo at Port Canaveral, Florida, and Plaintiff complied.

22. On or about February 19, 2010, the Vessel discharged the amount of 180,000.00 barrels of the cargo to non-party Vitol at Port Canaveral, Florida.

23. However, Sea Harvest still refused to pay the demurrage due and owing to Plaintiff under the charter party.

24. As Sea Harvest refused to pay the demurrage owed to Plaintiff, the Vessel ceased its discharging operation and currently awaits at the anchorage laden with the remaining approx. 60,000 barrels of ULSD.

25. Pursuant to clause 21 of the charter party and/or Clause 21 of the sub-charter party, on or about February 24, 2010 Plaintiff exercised a lien on the balance of cargo remaining

on board the Vessel (60,000 barrels of ULSD) in respect of the outstanding demurrage due to Plaintiff, which as of that date (February 24, 2010) amounted to $437,099.65. Demurrage continues to accrue at $17,000 a day.

26.  PDVSA was aware of and/or was on notice of the lien.

27.  PDVSA is liable to Plaintiff for all amounts paid to Sea Harvest after it became aware of the unpaid demurrage and/or the lien.

28.  As best as can now be estimated as of today March 18, 2010, as a result of Sea Harvest's breaches of the charter party, Plaintiff incurred or expects to incur damages in relation to demurrage in the amount of $817,000.00 excluding interest, reasonable attorneys fees and costs.

29.  In addition to the above, Sea Harvest failed to pay Plaintiff for costs incurred at the loading port which were and are for Sea Harvest's account in the amount of $23,085.02, in breach of the charter party.

30.  Plaintiff reserves its right to initiate arbitration proceedings on its *in rem* lien claim and its *in personam* claims against Sea Harvest in London.

31.  As best as can now be estimated, Plaintiff expects to recover the following amounts on its *in rem* and/or *in personam* claims:

| | | |
|---|---|---|
| A. | Principal claim:<br>Demurrage through March 18, 2010: | $ 817,000.00[3] |
| B. | Load Port Costs: | $ 23,085.00 |
| C. | Estimated recoverable legal fees and/expenses<br>(pursuant to London Arbitration) | $ 75,000.00 |
| **TOTAL** | | **$ 915,085.00** |

---

[3] Demurrage continues to accrue at 17,000 per day. Plaintiff hereby reserves its right to increase its claim as further damages accrue.

5

32. In the alternative, PDVSA was the de facto charterer of the Vessel from Plaintiff and is jointly and severally liable together with Sea Harvest for amounts due to the Plaintiff. Thus, together with Sea Harvest, PDVSA is jointly and severally liable to Plaintiff for all claims set forth herein and all amounts set forth in the preceding paragraph are in the alternative directly owed from PDVSA to Plaintiff. And, any of PDVSA's assets are subject to lien for Plaintiff's claims as set forth above.

33. Upon information and belief, there are, or will be, assets within this District subject to the jurisdiction of this Court and Plaintiff's lien, including, but not limited to, a cargo of 60,000 barrels of USDL aboard the HORIZON THEANO.

34. The Plaintiff seeks an order from this court directing the Clerk of Court to issue a warrant of arrest against the cargo, *in rem*, pursuant to Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims for the amount of Plaintiff's claims plus interest, attorneys fees and costs thereon.

**WHEREFORE**, Plaintiff prays:

A. That process in due form of law issue for the arrest of the said cargo of approx. 60,000 barrels of USDL aboard the HORIZON THEANO, or the proceeds of the sale thereof, pursuant to Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims for the amount of Plaintiff's claims plus interest, attorneys fees and costs thereon; citing all persons claiming any interest to appear and answer on oath all and singular the matters stated above;

B. For judgment herein in favor of Plaintiff and against the cargo of approx. 60,000 barrels of USDL for the amount of Plaintiff's claims plus interest, attorneys fees and costs thereon;

C. That a decree of Condemnation be issued against the proceeds of sale of said cargo of approx. 60,000 barrels of ULSD aboard the motor vessel HORIZON THEANO, for the amount of Plaintiff's claims plus interest, attorneys fees and costs thereon.

D. That it be declared that any and all persons, firms or corporations claiming any interest in the 60,000 barrels of ULSD aboard the motor vessel HORIZON THEANO are forever barred and foreclosed of and from all rights or equity or redemption of claim in said ULSD.

E. That this Court award Plaintiff the attorneys' fees and costs incurred in this action; and

F. That the Plaintiff has such other, further and different relief as the Court may deem just and proper.

Dated: March 17th, 2010

DAVID W. McCREADIE
Florida Bar No. 308269
DOUGLAS R. WILLIAMS
Florida Bar No. 0014876
LAU, LANE, PIEPER, CONLEY
& McCREADIE, P.A.
100 S. Ashley Drive, Suite 1700
Tampa, Florida 33602
Telephone No.: (813) 229-2121
Facsimile No.: (813) 228-7710
dmccreadie@laulane.com
dwilliams@laulane.com

-and-

Patrick F. Lennon (PL 2162)
Nancy R. Siegel (NP 2871)
LENNON, MURPHY & LENNON, LLC
420 Lexington Ave., Suite 300
New York, NY 10170
Phone (212) 490-6050
Fax (212) 490-6070
pfl@lenmur.com
nrs@lenmur.com

## VERIFICATION

State of Connecticut  )
                     )   ss.:   Town of Southport
County of Fairfield  )

1. My name is Nancy R. Siegel.

2. I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3. I am an attorney in the firm of Lennon, Murphy & Lennon, attorneys-in-fact for the Plaintiff.

4. I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5. The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

6. The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

7. I am authorized to make this Verification on behalf of the Plaintiff.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
Nancy R. Siegel, Esq.

3/18/2010
Date of execution